OPINION
Defendant-appellant Vincent Mark Myers appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of domestic violence in violation of R.C. 2919.25(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 16, 2001, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. The indictment specifically alleged that appellant had knowingly caused or attempted to cause physical harm to Laura Nevil. At his arraignment on April 20, 2001, appellant entered a plea of not guilty to the charge contained in the indictment. Subsequently, a jury trial commenced on June 11, 2001. The following evidence was adduced at trial.
Since February of 2001, Laura Nevil has lived in an apartment with her two daughters, who were twelve years old and two years old as of the date of trial. The apartment in which Nevil resides is located on the upstairs floor of a house that has been divided into four apartments.
At trial, Nevil testified that she had lived "on and off for four years" with appellant, who is the father of her youngest daughter. Trial Transcript at 136. While appellant did not reside with Nevil, Nevil testified that during March of 2001, appellant "would come up there periodically and visit me and the kids. You know, just whenever he would come by. Sometimes he would stay, sometimes he wouldn't". Trial Transcript at 137.
On March 15, 2001, appellant, who Nevil testified had been drinking, came over to Nevil's apartment between 5:00 p.m. and 7:00 p.m. and accused her of having an affair with a neighbor from whom she had borrowed some cigarettes. When Nevil told appellant that there was "nothing going on, I just asked him for a cigarette", appellant became angry and started arguing with her. Trial Transcript at 140. Appellant, who was wearing leather type cowboy boots, then followed Nevil into the kitchen and kicked her in the back of her left leg while calling her a "bitch" and "slut". Trial Transcript at 142. As a result of appellant's kick, Nevil lost her balance and started falling forward. Appellant, who was yelling at Nevil, then grabbed Nevil by her knee with his right hand. At trial, Nevil testified that due to appellant's kick, her leg "swelled up for a long time" and that she "still ha[d] problems with it now". Trial Transcript at 142. During the rest of the evening, Nevil tried to"just be quiet and act like everything was okay" in order to get appellant under control. Trial Transcript at 143. After spending the night sleeping on the couch in Nevil's living room, appellant got up and left the next day around 2:00 p.m. or 3:00 p.m.
Later the next day, appellant's daughter, Jean Myers, came over to Nevil's apartment with a friend, Regina Bee, and stayed for about half an hour. Nevil testified at trial that she told appellant's daughter "I was upset with her dad because he kicked me in the back of my legs". Trial Transcript at 146. Nevil, however, did not show appellant's daughter any of her bruises.
At approximately 7:00 p.m. on March 18, 2001, appellant came over to Nevil's apartment and began arguing with her again since she had asked the upstairs neighbor for some cigarettes. According to Nevil, "this time he was kicking me in my right leg, a couple times he had kicked me; but first he came at me — he come at me and was trying to grab a hold of my hair, but he had scratched my face and I tried to get away from him; and that's when he kicked me twice in my right leg". Trial Transcript at 148. During the attack, which occurred in the kitchen, the couple's two year old daughter was in the living room watching TV. After Nevil began tending to the couple's daughter in an attempt to smooth things over, appellant finally left Nevil's apartment.
Although Nevil did not contact the police immediately because she "was afraid", on March 20, 2001, Nevil and her brother went to the Canton Police Department. Trial Transcript at 152. While Nevil was at the police department, photographs were taken of her injuries.[1] The Canton Police Detective who took the photographs testified at trial that Nevil had bruising on her face and her legs. When questioned, Nevil denied that her injuries were caused by falling down the stairs.
Debra Taylor, who lives downstairs from Nevil, testified at appellant's trial that she was home during both of the above incidents. Taylor testified that the stairs leading upstairs to Nevil's apartment are just outside her apartment and that she could hear everything and everyone using the stairs. During direct examination, Taylor testified that, during the period from March 15, 2001, and March 18, 2001, she did not hear or see anyone fall down the stairs. Taylor further testified that when she saw appellant after March 18, 2001, appellant "was just asking me about the argument and that . . . they had had the day before and wondered if I seen her [Nevil] fall down the steps. He had said that my daughter was out there with her girl friend and they had seen her fall down the steps; and I just kind of shook my head oh, yeah, okay. I already knew her daughter didn't see him, she was out there, she would have told me." Trial Transcript at 195. On cross-examination, Taylor testified that, on March 18, 2001, a neighbor asked to use Taylor's telephone to report a fight between appellant and Nevil.
Jean Myers, appellant's daughter, testified at trial on her father's behalf. At trial, Myers testified that when she stopped at Nevil's apartment on March 15, 2001, to see her half-sister, she found Nevil drinking with some neighbors. According to Myers, Nevil who appeared to be "very intoxicated" and was stumbling around, fell down the stairs as Myers was leaving with her half-sister. Trial Transcript at 224-225. Myers testified that when she returned to Nevil's apartment the next day, Nevil "asked if I remembered when she fell down the stairs". Trial Transcript at 227. Nevil then showed Myers the bruise on her leg. When questioned, Myers indicated that Nevil never told her that her [Nevil's] bruises were caused by appellant kicking or assaulting her. While Myers admitted noticing a mark on Nevil's face, she testified that Nevil told her that "the baby had threw a Tonka truck at her". Trial Transcript at 228. Myers also testified that, on March 18, 2001, Nevil was over at her house with appellant and was "sitting on his lap kissing". Trial Transcript at 237. According to Myers, the two slept together that night in Myer's bed.
At the conclusion of the testimony and the end of deliberations, the jury, on June 12, 2001, found appellant guilty of domestic violence as charged in the indictment. The jury further found that appellant previously had been convicted of domestic violence.[2] Thereafter, as memorialized in a Judgment Entry filed on June 27, 2001, the trial court sentenced appellant to eleven months in prison.
It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 THE TRIAL COURT ERRED IN IMPOSING AN ELEVEN MONTH SENTENCE WITHOUT SUFFICIENT EVIDENCE TO SUPPORT THE STATUTORY CRITERIA OR MAKE THE REQUISITE FINDINGS.
 I
Appellant, in his first assignment of error, contends that his conviction for domestic violence in violation of R.C. 2919.25(A) was against the sufficiency and manifest weight of the evidence. We disagree.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
In the case sub judice, appellant was convicted of domestic violence in violation of R.C. 2919.25(A). Such section states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." While appellant does not dispute that Nevil is a "family or household member", appellant argues that there was insufficient evidence presented at trial that appellant caused or attempted to cause physical harm to Nevil.
However, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused physical harm to Nevil on March 15, 2001, and March 18, 2001. As is stated above, at trial, Nevil testified that on March 15, 2001, appellant, after accusing Nevil of cheating on him, kicked her in the leg, causing her leg to swell up "for a long time". Trial Transcript at 142. Nevil further testified that on March 18, 2001, appellant kicked her twice in the right leg and scratched her face. At trial, the Detective who took photographs of appellant's injuries on March 20, 2001, testified that Nevil had bruising on her legs and face and a "reddish mark to her cheek area". Trial Transcript at 202. Photographs of appellant's injuries taken by the Detective and by the Canton City Prosecutor's Office were admitted into evidence.
While appellant points out that Nevil did not immediately go to the police station after the two attacks, Nevil testified at trial that she waited until March 20, 2001, to do so because she was "afraid". Trial Transcript at 152. Nevil's brother, Gus George, testified that he had to ask her between four and six times to go to the police department to report the attacks. Furthermore, while appellants' witnesses testified that Nevil told them that she had fallen down the stairs, Debra Taylor, Nevil's neighbor who was home at the time of the two attacks and whose apartment was located near the stairs, testified that she did not hear anything on the dates in question. Taylor also testified that on March 18, 2001, a neighbor had asked to use her telephone to call the police to report a fight between appellant and Nevil. Based on the foregoing, we find that appellant's conviction for domestic violence is not against the sufficiency of the evidence.
We further find that appellant's conviction is not against the manifest weight of the evidence. Upon our review of the evidence, we cannot say that the jury lost its way so as to create a manifest miscarriage of justice. While appellant argues that both Myers and Regina Bee, Myers' friend, testified that Nevil told them that she had fallen down the stairs, the jury, as trier of fact, clearly was in the best position to assess the witnesses' credibility. Clearly, the jury found Nevil's version of events more credible.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, argues that the trial court erred in sentencing appellant to an eleven month prison sentence. Appellant specifically maintains in his assignment of error that the sentence was not supported by sufficient evidence and that the trial court, in sentencing appellant, did not make the requisite findings. However, we concur with appellee that, in support of his assignment, "appellant argues simply that the evidence does not support such a sentence."
R.C. 2953.08 governs an appeal of sentence for a felony and establishes our standard of review. Subsection (G)(2) states as follows:
 The court hearing an appeal of a sentence under division (A) or (B) or (C) of this section . . . may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing . . . The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 (a) That the record does not support the sentencing court's findings . . .;
(b) That the sentence is otherwise contrary to law.
Clear and convincing evidence is evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Appellant in the case sub judice was convicted of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. Pursuant to R.C. 2929.14(A)(5), the possible prison sentence for a felony of the fifth degree ranges from six to twelve months. Thus, appellant, who previously served a prison term, was sentenced to one month less than the maximum sentence.
In the case sub judice, the trial court, after indicating that it had considered the factors of R.C. 2929.12 concerning seriousness and recidivism factors, made the following findings, in pertinent part:
 THE COURT: The court has considered the record, the oral statements, the victim impact statement, as well as principles and purposes of sentencing under Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12.
 Additionally the Court has had the benefit of observing the trial in this matter.
 With respect to the recidivism factors, [the] Court finds that recidivism is more likely in that the Defendant does have a history of criminal convictions and specifically the Court has — or the Defendant has a history of domestic violence. He was convicted of domestic violence in 1999 involving this same victim.
 The Court finds that the factors with respect to serious [sic] indicate that this is more serious in that the victim suffered serious physical harm which were illustrated by way of the photographs involved.
 The Court finds pursuant to Revised Code 2929.13(B) that the Defendant has previously served a prison term and once again that there was physical harm to a person in this case.
 The Court further finds that the Defendant is not amenable to community control and that prison is consistent with the purposes of Revised Code 2929.11.
 The Court finds pursuant to Revised Code 2929.14(B) that the shortest prison term possible will demean the seriousness of the offense and will not adequately protect the public, and therefore the Court is going to impose a greater term, that being a term of 11 months in prison.
Transcript of Sentencing Hearing at 330-332. Thus, after considering the seriousness and recidivism factors set forth in R.C. 2929.12, and finding R.C. 2929.13(B)(1)(a) and (g) to be applicable, the trial court imposed an eleven month term of imprisonment.
We find that the evidence in this case supports the eleven month sentence imposed by the trial court. While appellant argues that Nevil's injuries were minimal, as is set forth in detail above, Nevil's bruises, which occurred as a result of the attacks on March 15th and March 18th, were still visible on March 20, 2001. During the attack on March 18, 2001, appellant scratched Nevil's face while attempting to grab a hold of her hair. Moreover, at trial, Nevil testified that her leg, after the March 15th incident, "swelled up for a long time" and that she still had problems with her leg as of the time of the trial. In addition, during the attacks, one of which occurred while their young daughter was in the apartment, appellant called Nevil a "bitch" and a "slut". Finally, the record reveals that appellant has a prior felony conviction for domestic violence involving the same victim.
Upon review, we cannot find, under the clear and convincing standard of R.C. 2953.08, that the record does not support the sentence.
Appellant's second assignment of error is, therefore, overruled.
Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By EDWARDS, J., HOFFMAN, P.J. and GWIN, J. concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.
[1] Photographs of Nevil's injuries, which were also taken by the Canton City Prosecutor's Office, were admitted into evidence.
[2] Appellant was convicted in 1999 for domestic violence in the Stark County Court of Common Pleas (Case No. 1999-CR-0570).